[No. F068281. Fifth Dist. June 25, 2015.]

THE PEOPLE, Plaintiff and Respondent, v.
MAXAMILLION LEE McDONALD, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

---

*Under California Rules of Court, rules 8.1105(b) and 8.1110, only the Introduction, the introductory paragraph to part II of the Discussion entitled "Jury Instructions," part IIA. and C. of the Discussion, and the Disposition are certified for publication.

**COUNSEL**

Scott Concklin, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Michael P. Farrell, Assistant Attorney General, Carlos A. Martinez and Jeffrey D. Firestone, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

## DETJEN, Acting P. J.—

### INTRODUCTION

On August 19, 2012, Christopher Patterson snatched a gold chain from around the neck of 71-year-old Guadalupe Ramos.[1] In the process, he either knocked or threw her to the pavement of a grocery store parking lot. Patterson fled on foot; Maxamillion Lee McDonald (defendant), the driver of a car parked several spaces away from the Ramos vehicle, pulled out of the lot and picked Patterson up a block or two away. With defendant in the car was Lawrence Slaughter. The trio—all members of the East Side Crips criminal street gang—then drove to a business that purchased gold. Meanwhile, Guadalupe developed an irregular heartbeat. She was pronounced dead about an hour after the robbery. The day before, defendant, accompanied by Slaughter, had grabbed a gold chain from the neck of a woman in a different store's parking lot.

Defendant now stands convicted, following a jury trial, of first degree murder during the commission of a robbery (Pen. Code,[2] §§ 187, subd. (a), 189, 190.2, subd. (a)(17); count 1), robbery (§ 212.5, subd. (c); counts 2 & 4), and active participation in a criminal street gang (§ 186.22, subd. (a); count 3).[3] As to counts 1 and 2, the jury further found defendant committed the offense for the benefit of, at the direction of, or in association with a criminal street gang.[4] (§ 186.22, subd. (b)(1).) Following a bifurcated court trial, defendant was found to have been previously convicted of a serious or violent felony (§§ 667, subds. (c)–(j), 1170.12, subds. (a)–(e)) and to have served two prior prison terms (§ 667.5, subd. (b)). Defendant's motion for a new trial was denied, and, the People not having sought the death penalty, defendant was sentenced to an unstayed term of life in prison without the

---

[1] For clarity, members of the Ramos family are sometimes referred to by their first names. No disrespect is intended.

[2] All statutory references are to the Penal Code.

[3] Defendant originally was jointly charged with Patterson and Slaughter in all but one count, but their cases were severed. Only defendant's case is before us on this appeal.

[4] A gang enhancement (§ 186.22, subd. (b)(1)) and enhancement for personal infliction of great bodily injury (§ 12022.7) were alleged as to count 4, but set aside prior to trial (§ 995).

possibility of parole plus 12 years. He was ordered to pay restitution and various fees, fines, and assessments.

In the published portion of this opinion, we hold there was prejudicial instructional error concerning the requirement that defendant must have aided and abetted the robbery at or before the time of the act causing death. We also hold the jury was correctly instructed on the specific intent required by section 186.22, subdivision (b)(1).

In the unpublished portion, we conclude (1) there was insufficient evidence to support the special circumstance finding; (2) there was sufficient evidence to support the gang enhancements; (3) the error in giving CALCRIM No. 361 was harmless; and (4) the jury was adequately instructed concerning the elements of section 186.22, subdivision (a). We vacate the special circumstance finding and reverse the conviction and enhancement on count 1, affirm the conviction and enhancement on count 2, affirm the convictions on counts 3 and 4, affirm the prior strike and prison term enhancements, and remand the matter for further proceedings.

## FACTS[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISCUSSION

### I[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### II

#### JURY INSTRUCTIONS

Defendant raises a number of claims of purported instructional error.[31] We address each in turn.

A. *First Degree Felony Murder*

■ Defendant contends the trial court erred by failing to instruct, as to first degree felony murder, that the jury had to find he aided and abetted the

---

[*]See footnote, *ante*, page 16.

[31] Except as to CALCRIM No. 1400, the Attorney General does not claim the issue has been forfeited for appeal.

robbery before or at the time of the act(s) causing death.[32] Under the instructions given, he says, the jury could have believed defendant was guilty of aiding and abetting a robbery in progress by acting as a getaway driver before Patterson had reached a place of temporary safety, and, hence, was automatically guilty of felony murder even though the acts that caused Guadalupe's death had already been committed before he aided and abetted. We agree with defendant that his murder conviction must be reversed.[33]

## 1. *Background*

The prosecution presented evidence from which the jury reasonably could have determined defendant was a coplanner of the robbery and participated in casing the Foods Co for a victim, then acted as the getaway driver for the actual robber—in other words, that he aided and abetted the robbery from the outset. If jurors believed defendant's testimony, however, he had no idea ahead of time that Patterson was going to commit any kind of crime at the Foods Co, and only went to Patterson's aid (although suspecting Patterson had committed some kind of crime) after he saw Patterson running away from the store.[34]

Without objection or modification, the trial court gave CALCRIM No. 1603 in conjunction with instructions on robbery, as charged in counts 2 and 4, to wit: "To be guilty of robbery as an aider and abettor, the defendant must have formed the intent to aid and abet the commission of the robbery before or while a perpetrator carried away the property to a place of temporary safety. A perpetrator has reached a place of temporary safety with the property if he or she has successfully escaped from the scene, is no longer being pursued, and has unchallenged possession of the property."

---

[32] Defendant says this same error exists with respect to the robbery-murder special-circumstance instructions. Because we are reversing the true finding on the special circumstance and the allegation cannot be retried, any instructional error with respect to the special circumstance is immaterial. Accordingly, although portions of the robbery-murder special-circumstance instructions figure into our analysis, we address defendant's claim of error only with respect to the jury's first degree felony-murder verdict.

[33] Reversal of the conviction necessitates reversal of the related section 186.22, subdivision (b) enhancement. (See, e.g., *People v. Montes* (2014) 58 Cal.4th 809, 898 [169 Cal.Rptr.3d 279, 320 P.3d 729]; *People v. Petrilli* (2014) 226 Cal.App.4th 814, 828 [172 Cal.Rptr.3d 480].) Because sufficient evidence supports the enhancement, however, it can be retried along with the murder charge. (See *People v. Zarazua* (2008) 162 Cal.App.4th 1348, 1359, fn. 18 [77 Cal.Rptr.3d 29].)

[34] During the jury instruction conference, the parties discussed whether the trial court should accede to defendant's request for an instruction on accessory after the fact. The trial court acknowledged there was evidence, if believed, that defendant was not aware of the commission of a crime until after he started driving Patterson away, but then he continued to drive Patterson away after becoming aware.

During the jury instruction conference, the parties agreed the only applicable theory of first degree murder was felony murder. The People requested that CALCRIM No. 540B be given; defense counsel had no objection. Pursuant to that instruction, the trial court told the jury:

"The defendant is charged in Count 1 with murder under a theory of felony murder. The defendant may be guilty of murder under a theory of felony murder, even if another person did the act that resulted in the death. I will call the other person the perpetrator.

"To prove that the defendant is guilty of first-degree murder under this theory, the People must prove that: One, the defendant aided and abetted or was a member of a conspiracy to commit robbery; two, the defendant intended to aid and abet the perpetrator in committing or intended that one or more members of the conspiracy commit robbery; three, if the defendant did not personally commit robbery, then a perpetrator, whom the defendant was aiding and abetting or with whom the defendant conspired, personally committed robbery; four, while committing robbery, the perpetrator caused the death of another person; and five, there was a logical connection between the cause of death and the robbery. The connection between the cause of death and the robbery must involve more than just their occurrence at the same time and place.

"A person may be guilty of felony murder even if the killing was unintentional, accidental or negligent.

"To decide whether the perpetrator committed robbery, please refer to the separate instructions that I will give you on that crime.

"To decide whether the defendant aided and abetted a crime, please refer to the separate instructions that I have given you on aiding and abetting. You must apply those instructions when you decide whether the People have proved first-degree murder under a theory of felony murder.

"It is not required that the person die immediately, as long as the cause of death and the felony are part of one continuous transaction.

"It is not required that the defendant be present when the death occurs."

For reasons not apparent from the jury instruction conference, the trial court omitted a bracketed paragraph from the instruction that would have told jurors: "[The defendant must have (intended to commit[,]/ [or] aid and abet[,]/ [or] been a member of a conspiracy to commit) the (felony/felonies)

of ___ <insert felony or felonies from Pen. Code, § 189> before or at the time that (he/she) caused the death.]"

With respect to the robbery-murder special circumstance, and without objection, the trial court gave CALCRIM No. 703, which told the jury, in pertinent part:

"If you decide that the defendant is guilty of first-degree murder but was not the actual killer, then when you consider the special circumstance of whether the murder was committed by the defendant while engaged in the commission of or acting as an accomplice to the crime of robbery, you must also decide whether the defendant acted either with intent to kill or with reckless indifference to human life.

"In order to prove this special circumstance for a defendant who is not the actual killer but who is guilty of first-degree murder as an aider and abettor, the People must prove either that the defendant intended to kill or the People must prove all of the following: One, the defendant's participation in the crime began before or during the killing; two, the defendant was a major participant in the crime; and three, when the defendant participated in the crime, he acted with reckless indifference to human life."

Finally, with the agreement of both parties, the trial court modified CALCRIM No. 730 to delete language referring to conspiracy. It then instructed the jury:

"The defendant is charged with the special circumstance of murder committed while engaged in the commission of robbery. To prove that this special circumstance is true, the People must prove that: One, the defendant aided and abetted a robbery; two, the defendant intended to aid and abet the perpetrator in committing a robbery; three, if the defendant did not personally commit the robbery, then a perpetrator whom the defendant was aiding and abetting before or during the killing personally committed a robbery; four, the perpetrator did an act that caused the death of another person; five, the act causing the death and the robbery were part of one continuous transaction; and six, there was a logical connection between the act causing the death and the robbery. The connection between the fatal act and the robbery must involve more than just their occurrence at the same time and place.

"To decide whether the perpetrator committed robbery, please refer to the separate instructions that I will give you on that crime.

"To decide whether the defendant aided and abetted a crime, please refer to the separate instructions that I have given you on aiding and abetting. You

must apply those instructions when you decide whether the People have proved first-degree murder under a theory of felony murder."

The final sentence quoted above was contained in both the court's oral and written instructions, a copy of which was given to the jury. The sentence should have read: "You must apply those instructions when you decide whether the People have proved *this special circumstance*." (Italics added.) Again, the trial court omitted the portion of the instruction that would have told jurors: "[The defendant must have (intended to commit[,]/ [or] aided and abetted/ [or] been a member of a conspiracy to commit) the (felony/felonies) of ___ <insert felony or felonies from Pen. Code, § 190.2(a)(17)> before or at the time of the act causing the death.]"

## 2. *Analysis*

" ' "[T]he crime of robbery is not confined to the act of taking property from victims. The nature of the crime is such that a robber's escape with his loot is just as important to the execution of the crime as obtaining possession of the loot in the first place." ' [Citation.] As a result, the commission of a robbery is ongoing ' "until the robber has won his way to a place of temporary safety." ' [Citation.] A robber has not reached a place of temporary safety while an immediate and active pursuit to recover the property is in progress. [Citation.]" (*People v. Debose* (2014) 59 Cal.4th 177, 205 [172 Cal.Rptr.3d 606, 326 P.3d 213].) Because of this, for aider and abettor liability where *robbery* is concerned, "a getaway driver must form the intent to facilitate or encourage commission of the robbery prior to or during the carrying away of the loot to a place of temporary safety." (*People v. Cooper* (1991) 53 Cal.3d 1158, 1165 [282 Cal.Rptr. 450, 811 P.2d 742], fn. & italics omitted; see *id.* at pp. 1169–1170.) As given here, CALCRIM No. 1603 correctly conveyed these legal principles with respect to the robbery charges.

■ Where the complicity of an aider and abettor in *felony murder* is concerned, however, different legal principles apply. In *People v. Pulido* (1997) 15 Cal.4th 713 [63 Cal.Rptr.2d 625, 936 P.2d 1235] (*Pulido*), the California Supreme Court "address[ed] a question regarding the scope of complicity in robbery murder. If one person, acting alone, kills in the perpetration of a robbery, and another person *thereafter* aids and abets the robber in the asportation and securing of the property taken, is the second person guilty of first degree murder under section 189? [The court] con-clude[d] the answer is no. Although the second person is an accomplice to robbery [citation], such participation in the robbery does not subject the accomplice to murder liability under section 189, because the killer and accomplice were not 'jointly engaged at the time of such killing' in a robbery

[citation]; the killer, in other words, was not acting, at the time of the killing, in furtherance of a 'common' design to rob [citation]." (*Id.* at p. 716.)[35]

In *Pulido*, the victim was shot in the head and died within seconds. (*Pulido, supra*, 15 Cal.4th at p. 717.) The court thus had no occasion to clarify the law with respect to the situation present here, in which the act or acts causing death are separated by a significant period of time from the death itself.[36] Other opinions make it clear, however, that what matters for purposes of felony-murder liability has always been the time of commission of the acts that resulted in the victim's death, even if death did not immediately result. (See, e.g., *People v. Cavitt* (2004) 33 Cal.4th 187, 196 [14 Cal.Rptr.3d 281, 91 P.3d 222]; *People v. Lewis* (2001) 25 Cal.4th 610, 647 [106 Cal.Rptr.2d 629, 22 P.3d 392]; *People v. Alvarez* (1996) 14 Cal.4th 155, 222 [58 Cal.Rptr.2d 385, 926 P.2d 365]; *People v. Ainsworth* (1988) 45 Cal.3d 984, 1016 [248 Cal.Rptr. 568, 755 P.2d 1017]; *People v. Celis* (2006) 141 Cal.App.4th 466, 473 [46 Cal.Rptr.3d 139]; *People v. Esquivel* (1994) 28 Cal.App.4th 1386, 1396 [34 Cal.Rptr.2d 324].)

In the present case, if the prosecution's version of events was accepted, defendant was guilty of robbery and first degree felony murder. If the defense's version was accepted, however, at most defendant was guilty of robbery. In light of the foregoing, the omitted paragraph of CALCRIM No. 540B, quoted *ante*, was a correct statement of the law and was factually applicable to the present case. Although the record does not show defendant objected to its omission, we believe the trial court should have included it on its own motion, with a slight modification so that the final clause referred to the time the perpetrator (rather than the defendant) caused death.

■ "A trial court has a sua sponte duty to instruct on the general principles of law relevant to the issues raised by the evidence. [Citation.]" (*People v. Marks* (1988) 45 Cal.3d 1335, 1345 [248 Cal.Rptr. 874, 756 P.2d 260].) One of the Bench Notes following CALCRIM No. 540B advises that if there is evidence the defendant did not form the intent to commit the felony, or did not aid and abet the felony, until after the homicide, he or she is

---

[35] "It is settled that if a defendant's liability for an offense is predicated upon the theory that he or she aided and abetted the perpetrator, the defendant's intent to encourage or facilitate the actions of the perpetrator 'must be formed *prior to or during* "commission" of that offense.' [Citations.]" (*People v. Montoya* (1994) 7 Cal.4th 1027, 1039 [31 Cal.Rptr.2d 128, 874 P.2d 903].) Defendant's jury was so instructed.

[36] The *Pulido* court referred variously to complicity in a felony murder not extending to "one who joins the felonious enterprise after the killing has been completed" (*Pulido, supra*, 15 Cal.4th at p. 722), the requirement that the accomplice have been a conspirator or aider and abettor in the felony "at the time of the killing" (*id.* at p. 723), and its refusal to extend the first degree felony-murder rule to include aiders and abettors who joined the felonious enterprise "only after the murder has been completed" (*id.* at p. 726).

entitled *on request* to an instruction pinpointing the issue, and in such instances, the bracketed paragraph quoted *ante* should be given.  ⬛  Such notes do not have the force of law, however. (*People v. Fiore* (2014) 227 Cal.App.4th 1362, 1381 [174 Cal.Rptr.3d 806].) Moreover, in each of the cases cited as authority (*People v. Silva* (2001) 25 Cal.4th 345, 371 [106 Cal.Rptr.2d 93, 21 P.3d 769]; *People v. Hudson* (1955) 45 Cal.2d 121, 124–127 [287 P.2d 497]; see *People v. Turner* (1990) 50 Cal.3d 668, 691 [268 Cal.Rptr. 706, 789 P.2d 887]), the defendant was the actual killer. Even if it did not inspire confidence, defendant's testimony constitutes substantial evidence in support of a finding of robbery but not felony murder. (See *People v. Melton* (1988) 44 Cal.3d 713, 746 [244 Cal.Rptr. 867, 750 P.2d 741]; *People v. Mejia-Lenares* (2006) 135 Cal.App.4th 1437, 1446 [38 Cal.Rptr.3d 404].) Because the general instructions given by the court did not inform the jury that defendant had to have aided and abetted the robbery before the acts that resulted in Guadalupe's death in order to be found guilty of felony murder, the court had a sua sponte duty to instruct the jury on the timing of defendant's intent. (*People v. Esquivel, supra,* 28 Cal.App.4th at p. 1399; see *People v. Riccardi* (2012) 54 Cal.4th 758, 837–838 [144 Cal.Rptr.3d 84, 281 P.3d 1]; *People v. D'Arcy* (2010) 48 Cal.4th 257, 296–297 [106 Cal.Rptr.3d 459, 226 P.3d 949]; *People v. Marks, supra,* 45 Cal.3d at p. 1345; *People v. Anderson* (2006) 141 Cal.App.4th 430, 446–447 [45 Cal.Rptr.3d 910].)

Jurors were directed to consider the instructions together. As jurors are presumed to follow the instructions given by the court (*People v. Murtishaw* (1989) 48 Cal.3d 1001, 1044 [258 Cal.Rptr. 821, 773 P.2d 172]), we presume they did so. Accordingly, we must assess the effect of the giving of CALCRIM No. 1603, which described the timing of an aider and abettor's formation of intent vis-à-vis robbery, with the truncated version of CALCRIM No. 540B, which omitted a description of the timing of an aider and abettor's formation of intent vis-à-vis felony murder. "In assessing a claim of instructional error or ambiguity, we consider the instructions as a whole to determine whether there is a reasonable likelihood the jury was misled. [Citations.]" (*People v. Tate* (2010) 49 Cal.4th 635, 696 [112 Cal.Rptr.3d 156, 234 P.3d 428]; see *Estelle v. McGuire* (1991) 502 U.S. 62, 72–73 & fn. 4 [116 L.Ed.2d 385, 112 S.Ct. 475]; *Boyde v. California* (1990) 494 U.S. 370, 380 [108 L.Ed.2d 316, 110 S.Ct. 1190].) We also consider the arguments of counsel in assessing the probable impact of the instruction or instructions on the jury. (*People v. Young* (2005) 34 Cal.4th 1149, 1202 [24 Cal.Rptr.3d 112, 105 P.3d 487]; see *Weeks v. Angelone* (2000) 528 U.S. 225, 236 [145 L.Ed.2d 727, 120 S.Ct. 727].) We independently determine whether instructions correctly state the law. (*People v. Posey* (2004) 32 Cal.4th 193, 218 [8 Cal.Rptr.3d 551, 82 P.3d 755].)

Taken together, CALCRIM Nos. 540B and 1603, as given in this case, permitted defendant to be found guilty of felony murder even if he did not aid and abet the robbery until after commission of the act that caused Guadalupe's death. This was error.

Instructional error affecting an element of the charged offense warrants reversal unless it is harmless beyond a reasonable doubt. (*People v. Cooper, supra*, 53 Cal.3d at p. 1171; see *People v. Wilkins* (2013) 56 Cal.4th 333, 348–350 [153 Cal.Rptr.3d 519, 295 P.3d 903].) Likewise, when the jury is given the option of relying on two theories of guilt, one of which is legally correct but the other of which is legally incorrect, reversal is required unless the record demonstrates, beyond a reasonable doubt, that the verdict was actually based on a valid ground. (*People v. Chun* (2009) 45 Cal.4th 1172, 1203 [91 Cal.Rptr.3d 106, 203 P.3d 425]; *People v. Guiton* (1993) 4 Cal.4th 1116, 1129 [17 Cal.Rptr.2d 365, 847 P.2d 45]; *People v. Green* (1980) 27 Cal.3d 1, 69 [164 Cal.Rptr. 1, 609 P.2d 468], overruled on other grounds in *People v. Martinez* (1999) 20 Cal.4th 225, 239 [83 Cal.Rptr.2d 533, 973 P.2d 512] & *People v. Hall* (1986) 41 Cal.3d 826, 834, fn. 3 [226 Cal.Rptr. 112, 718 P.2d 99]; see *Hedgpeth v. Pulido* (2008) 555 U.S. 57, 58 [172 L.Ed.2d 388, 129 S.Ct. 530]; *Chapman v. California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 87 S.Ct. 824].)[37] In making this determination, we must consider what effect the error had upon the guilty verdict *in this case*, and so we must look "to the basis on which 'the jury *actually rested* its verdict.' [Citation.] The inquiry, in other words, is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in *this* trial was surely unattributable to the error." (*Sullivan v. Louisiana* (1993) 508 U.S. 275, 279 [124 L.Ed.2d 182, 113 S.Ct. 2078]; see *People v. Esquivel, supra*, 28 Cal.App.4th at pp. 1399–1400.) As the California Supreme Court has explained, "*Neder* [*v. United States* (1999) 527 U.S. 1, 19 [144 L.Ed.2d 35, 119 S.Ct. 1827]] instructs us to 'conduct a thorough examination of the record. If, at the end of that examination, the court cannot conclude beyond a reasonable doubt that the jury verdict would have been the same absent the error . . . it should not find the error harmless.' [Citation.]" (*People v. Mil* (2012) 53 Cal.4th 400, 417 [135 Cal.Rptr.3d 339, 266 P.3d 1030].)

Error of the type present here may be found harmless where the jury resolved the issue against the defendant in another context, pursuant to other, properly given instructions. (See, e.g., *People v. Sakarias* (2000) 22 Cal.4th 596, 625 [94 Cal.Rptr.2d 17, 995 P.2d 152]; *People v. Hayes* (1990) 52 Cal.3d 577, 628 [276 Cal.Rptr. 874, 802 P.2d 376]; *People v. Sanders* (1990) 51

---

[37] A legally incorrect theory is one "which, if relied upon by the jury, could not *as a matter of law* validly support a conviction of the charged offense." (*People v. Harris* (1994) 9 Cal.4th 407, 419 [37 Cal.Rptr.2d 200, 886 P.2d 1193], fn. omitted.)

Cal.3d 471, 509–510 [273 Cal.Rptr. 537, 797 P.2d 561].) The Attorney General urges us to use this means to find the error harmless in the present case. She says that taken together, the instructions on aiding and abetting, felony murder, and the special circumstance, and the jury's special circumstance finding, show the jury necessarily found defendant "had pre-force joinder"; hence, " '[t]he factual question posed by [giving the unmodified form of CALCRIM No. 1603 and deleting the bracketed language from CALCRIM No. 540B] was necessarily resolved adversely to defendant under other, properly given instructions.' [Citation.]" (*Pulido, supra,* 15 Cal.4th at p. 726.) We disagree.

Pursuant to CALCRIM No. 401, jurors were instructed that "[t]o prove that the defendant is guilty of a crime based on aiding and abetting that crime, the People must prove that: One, the perpetrator committed the crime; two, the defendant knew that the perpetrator intended to commit the crime; three, *before or during the commission of the crime, the defendant intended to aid and abet the perpetrator in committing the crime*; and four, the defendant's words or conduct did, in fact, aid and abet the perpetrator's commission of the crime." (Italics added.) Since there was no evidence anyone intended to commit the crime of murder, the crime referred to in the instruction can only be robbery. Yet CALCRIM No. 1603 permitted jurors to find defendant aided and abetted robbery even if he did not form the intent to aid and abet until the asportation phase of the crime. CALCRIM No. 540B, the instruction on first degree felony murder, merely required that defendant have aided and abetted robbery, and that "while committing robbery, the perpetrator caused the death of another person." Although the instruction went on to state, "It is not required that the person die immediately, as long as the cause of death and the felony are part of one continuous transaction," nothing in its language—particularly when considered with CALCRIM Nos. 401 and 1603—required jurors to find defendant was aiding and abetting at the time of the act causing death.

The special circumstance instructions similarly do not allow us to say the jury necessarily resolved the issue adversely to defendant.[38] CALCRIM No. 703 required the People to prove, inter alia, that "the defendant's participation in the crime began before or during *the killing* . . . ." (Italics added.) CALCRIM No. 730 required the People to prove, inter alia, that "if the defendant did not personally commit the robbery, then a perpetrator whom the defendant was aiding and abetting before or during *the killing* personally committed a robbery; . . . the perpetrator did an act that caused the

---

[38] Defendant argues that since the jury's finding on the special circumstance allegation was not supported by substantial evidence, it does not amount to a proper resolution of an issue. We express no opinion on this point.

death of another person; [and] the act causing the death and the robbery were part of one continuous transaction . . . ." (Italics added.)

■ Jurors were told that words and phrases not specifically defined in the instructions were to be applied "using their ordinary, everyday meanings." The ordinary definition of "kill" is "to deprive of life : put to death : cause the death of." (Webster's 3d New Internat. Dict. (1986) p. 1242.) The common definition of "killing" includes "the act of one that kills; *esp* : MURDER, HOMICIDE" and "having the effect of killing : as . . . producing death." (*Ibid.*)

In light of the variance among the everyday meanings of "killing," it is reasonably likely one or more jurors interpreted the instructions as requiring that defendant's participation/aiding and abetting precede *Guadalupe's death itself*, and not the act that caused her death.[39] Inclusion of the bracketed portion of CALCRIM No. 730 that informed jurors defendant must have aided and abetted before or at the time of the *act causing death* would have cured the problem (as would inclusion of that bracketed portion of CALCRIM No. 540B), because it would have clarified that the critical moment for felony-murder complicity was commission of the act causing death, and not death itself. Without that clarification, however, it cannot be determined beyond a reasonable doubt that the giving of CALCRIM No. 1603 in its unmodified form, together with omission of the bracketed language from CALCRIM No. 540B, did not contribute to defendant's conviction of first degree murder. (See *People v. Swain* (1996) 12 Cal.4th 593, 607 [49 Cal.Rptr.2d 390, 909 P.2d 994].) Nor can we "be certain beyond a reasonable doubt that the jury would have found defendant guilty of [first degree] murder had it been properly instructed." (*People v. Banks* (2014) 59 Cal.4th 1113, 1153 [176 Cal.Rptr.3d 185, 331 P.3d 1206], disapproved on another ground in *People v. Scott* (2015) 61 Cal.4th 363, 391, fn. 3 [188 Cal.Rptr.3d 328, 349 P.3d 1028].) While there would have been sufficient evidence to support a finding defendant aided and abetted before or during commission of the act causing death, jurors could have believed defendant's claim he only realized Patterson might have committed a crime, and decided to help Patterson, during the asportation phase of the robbery. (See *People v. Haley* (2004) 34 Cal.4th 283, 310 [17 Cal.Rptr.3d 877, 96 P.3d 170].) Stated another way, "the evidence and the inferences that may reasonably be drawn from the evidence . . . do not prove [defendant aided and abetted before or during the act that caused death] so overwhelmingly that the jury could not have had a

---

[39] "[A] victim's death is a sine qua non of murder . . . ." (*People v. Celis, supra,* 141 Cal.App.4th at p. 471.) "[A] murder ends with the death of the victim." (*People v. Esquivel, supra,* 28 Cal.App.4th at p. 1397.)

reasonable doubt on the matter. [Citations.]" (*People v. Marshall* (1997) 15 Cal.4th 1, 44 [61 Cal.Rptr.2d 84, 931 P.2d 262]; see *People v. Riccardi, supra,* 54 Cal.4th at p. 839.)

The arguments of counsel did nothing to lessen the prejudicial impact of the instructions. For instance, the prosecutor told the jury:

"In regards to Mr. McDonald, he is not alleged to be the actual perpetrator or the person who pulled the chain that [Guadalupe] was wearing that day. He is alleged to be what is called an aider and abettor. The difference is that he didn't pull the chain. As you see at the bottom [of the prosecutor's visual aid] they are both equally guilty. That is the only difference. He did not physically take that chain . . . but, because he was there to help, he was there to facilitate, he was there to encourage his gang buddy, he is equally guilty of robbery. *He's equally guilty of murder.*

"Let's start with the different types of criminal liability that can lead you to being guilty of murder. You are the killer. You directly commit. You shoot somebody. You stab somebody. You pull the chain on an old lady and she falls to the ground and dies 45 minutes later. You directly committed that murder. You are guilty of murder.

"In this case that's Mr. Patterson.

"You can also be guilty of murder based on aiding and abetting, what I just spoke about. You aided and abetted a robbery. Robbery is a violent crime. You knew about the intention. You either actually committed the robbery or you knew someone was going to commit a robbery and, *during the course of that robbery,* you helped them. *You are guilty of murder.*" (Italics added.)

The prosecutor also stated, with respect to the murder charge: "You're going to see aiding and abetting. . . . You have to have knowledge of the intent of the perpetrator to commit the crime before or during the commission of the crime. The defendant has to intend to aid or/and abet. That has to be the intent of Mr. McDonald in this case, *before or during the commission of that robbery* . . . ." (Italics added.) In addition, the prosecutor told jurors:

"Once you have started to act or move towards a robbery, if death results, it's first-degree murder. The killer, again, is responsible for the killing. A co-felon, a co-participant, somebody aiding and abetting is also equally liable if they embarked on that robbery with that person. [¶] . . . [¶]

"Again, *robbery is a continuing crime. It is not over until you reach a place of safety,* as alleged in Count 2 and 4.

"As to first-degree murder, Mr. McDonald is alleged to be an aider and abettor to the intended crime that he had knowledge of the intent of Mr. Patterson, that he had knowledge of the intent of Mr. Slaughter and, before or during *the commission of the crime*, he intended to aid and abet the perpetrator, again, Mr. Patterson. [¶] . . . [¶]

"Again, this jury instruction was read to you. You will have it in the back. I just put the pertinent portions down.

"The defendant either committed or aided and abetted a robbery. That's the first decision you have to make. If he committed or he aided and abetted the robbery, you move on from there. He intended to aid and abet the robbery, and *if, during the course of that robbery, before or during, somebody dies, he's guilty of murder under first-degree felony murder.* Those are the steps you take.

"You decide first about robbery, you decide about his intention as to that robbery, *and then if [Guadalupe] died during the course of that robbery, Mr. McDonald is guilty of murder.*" (Italics added.)

Defense counsel argued defendant was at most an accessory after the fact. She told the jurors:

"What's an aider and abettor? Well, let me give you three examples so that it hits home . . . . If Mr. McDonald and Mr. Patterson at the Haley apartments said to each other, 'Hey, you know what, why don't we walk across the street, look for some old women. Why don't you go ahead and, you know, scope out the store. I'll sit in the car and, when I see you run, I'll go ahead and, you know, meet you on Height and Gurley.' Okay. Let's say that's what Mr. Patterson does. [Guadalupe], we know, died. You better believe Mr. McDonald would be an aider and abettor, okay? And he would be guilty of felony murder.

"Now let me give you a second scenario. Mr. McDonald is sitting in his car. He turns around and he sees Mr. Patterson pull the chain off [Guadalupe], and he had no idea . . . that Mr. Patterson was going to do that. He sees Mr. Patterson pull the chain, sees Mr. Patterson being chased right there, and says, oh, oh, I got to go help my gang buddy. Pulls back the car in the parking lot, says to Mr. Patterson, 'Hey, get in the car, okay? We're in this together. Let's get out of here.' Mr. McDonald would be an aider and abettor, *and you better believe he'd be guilty of felony murder.*

"Let's take a third scenario. Mr. McDonald is sitting in his car. He has no idea what Mr. Patterson is about to do. Mr. Patterson gets out, commits the

robbery, starts to run through the parking lot. Mr. McDonald looks back and says, okay, something has happened, I don't know what. Is he mouthing off? Has he hit something? Has he stolen something? I have no idea. Pulls the car out; goes to Height and Gurley; is able to see where Mr. Patterson is; picks him up, okay? And at the moment Mr. Patterson gets in the car, doesn't know what has happened, drives on the horseshoe[-shaped portion of the street], and Mr. Patterson says, either on that street or the next street, . . . 'I pulled a chain from an old wom[a]n.' Is he an aider and abettor, Mr. McDonald? The answer to that is absolutely not. He is not an aider and abettor.

"Is he guilty of something? You better believe that. What's he guilty of? He is guilty of being an accessory after the fact." (Italics added.)

The instructions, taken as a whole, did not correctly state the law with respect to first degree felony-murder complicity of an aider and abettor. Neither attorney clarified the matter. The conviction on count 1 must be reversed, although it is supported by substantial evidence and so can be retried.

In light of the fact we are reversing the murder conviction, we need not address defendant's further claim the trial court erred by failing to instruct on involuntary manslaughter as a lesser included offense to felony murder.[40] For guidance of the court and parties upon retrial, however, we observe that if the trial court again finds sufficient evidence to warrant the giving of instructions on grand theft as a lesser included offense of robbery, and on the natural and probable consequence theory of second degree murder with an underlying offense of robbery or grand theft, it should also instruct on involuntary manslaughter.[41] As defendant asserts, if the jury were to find defendant

---

[40] "Even in the absence of a request, the trial court has a duty to instruct *sua sponte* on offenses necessarily included in the charged offense if there is sufficient evidence to support a conviction of the lesser included offense. [Citation.]" (*People v. Edwards* (1985) 39 Cal.3d 107, 116, fn. 10 [216 Cal.Rptr. 397, 702 P.2d 555].) "Involuntary manslaughter is a lesser offense of murder, distinguished by its mens rea. [Citation.] The mens rea for murder is specific intent to kill or conscious disregard for life. [Citation.] Absent these states of mind, the defendant may incur homicide culpability for involuntary manslaughter. [Citations.]" (*People v. Butler* (2010) 187 Cal.App.4th 998, 1006 [114 Cal.Rptr.3d 696].)

[41] The instructions were given upon the People's request and over defense objection. With respect to the natural and probable consequences theory, the trial court told the jury, in pertinent part: "The defendant is charged with robbery or grand theft and with murder. You must decide whether the defendant is guilty of robbery or grand theft. If you find the defendant is guilty of either of these crimes, you must then decide whether he is guilty of murder. [¶] Under certain circumstances a person who is guilty of one crime may also be guilty of other crimes that were committed at the same time. [¶] To prove that the defendant is guilty of murder, the People must prove that: One, the defendant is guilty of robbery or grand theft; two, during the commission of the robbery or grand theft a co-participant in that robbery or grand theft committed the crime of murder; and three, under all of the circumstances, a reasonable

lacked the knowledge and intent necessary to convict him of aiding and abetting a robbery, but that he aided and abetted grand theft, it would follow that the jury could find second degree murder (based on the risk the victim of grand theft might die of a heart attack) was too remote to be considered a natural and probable consequence, but find involuntary manslaughter based on the fact the victim was killed in the commission of a felony that was not inherently dangerous.[42]

B.  *CALCRIM No. 361\**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

C.  *Intent Required for Gang Enhancement*

Pursuant to CALCRIM No. 1401, the trial court instructed the jury, in pertinent part:

"If you find the defendant guilty of the crimes charged in Counts 1, 2 and/or 4, you must then decide whether for each crime the People have proved the additional allegation that the defendant committed that crime for the benefit of, at the direction of, or in association with a criminal street gang. . . .

"To prove this allegation, the People must prove that: One, the defendant committed the crime for the benefit of, at the direction of, or in association with a criminal street gang; and two, the defendant intended to assist, further or promote *criminal conduct by gang members*." (Italics added.)

Defendant now contends the instruction was erroneous because it failed to require a specific intent to benefit, further, or promote " '*the gang*.' " The

---

person in the defendant's position would have known that the commission of murder was a natural and probable consequence of the commission of the robbery or grand theft." The prosecutor subsequently explained to the jury that the natural and probable consequences doctrine came into play with respect to second degree murder.

[42] " 'A homicide that is a direct causal result of the commission of a felony inherently dangerous to human life (other than the . . . felonies enumerated in . . . § 189) constitutes at least second degree murder. [Citations.]' In determining whether the felony is inherently dangerous, 'we look to the elements of the felony in the abstract, not the particular "facts" of the case.' [Citations.]" (*People v. Patterson* (1989) 49 Cal.3d 615, 620–621 [262 Cal.Rptr. 195, 778 P.2d 549].) Because grand theft is not a felony that is inherently dangerous to human life (*People v. Phillips* (1966) 64 Cal.2d 574, 583 [51 Cal.Rptr. 225, 414 P.2d 353], overruled on another ground in *People v. Flood* (1998) 18 Cal.4th 470, 490, fn. 12 [76 Cal.Rptr.2d 180, 957 P.2d 869]), it cannot form the basis for a conviction of second degree murder on a felony-murder theory, but may support a finding of involuntary manslaughter (*People v. Burroughs* (1984) 35 Cal.3d 824, 835–836 [201 Cal.Rptr. 319, 678 P.2d 894], overruled on another ground in *People v. Blakeley* (2000) 23 Cal.4th 82, 89 [96 Cal.Rptr.2d 451, 999 P.2d 675]).

\*See footnote, *ante*, page 16.

misstatement of the intent element was prejudicial, he claims, because it allowed the jury to find the gang enhancement based on a specific intent to assist criminal conduct of certain gang members (specifically, Patterson and Slaughter) rather than the gang itself, and the prosecutor expressly urged the jury to construe the instruction in that manner.[45] We conclude the instruction correctly stated the law.

As previously stated, subdivision (b)(1) of section 186.22 prescribes imposition of enhanced punishment for "any person who is convicted of a felony committed for the benefit of, at the direction of, or in association with any criminal street gang, *with the specific intent to promote, further, or assist in any criminal conduct by gang members* . . . ." (Italics added.)[46] As given in defendant's case, CALCRIM No. 1401 essentially tracked the statutory language. The California Supreme Court has explained:

" '[T]he language of a statute defining a crime or defense is generally an appropriate and desirable basis for an instruction, and is ordinarily sufficient when the defendant fails to request amplification. If the jury would have no difficulty in understanding the statute without guidance, the court need do no more than instruct in statutory language.' [Citations.]

"The rule to be applied in determining whether the meaning of a statute is adequately conveyed by its express terms is well established. When a word or phrase ' "is commonly understood by those familiar with the English language and is not used in a technical sense peculiar to the law, the court is not required to give an instruction as to its meaning in the absence of a request." ' [Citations.] A word or phrase having a technical, legal meaning

---

[45] The prosecutor argued: "As to the gang enhancements, you have to decide, again, does the gang exist? And then you move on to, what is the defendant's level of participation? I think he told you what his level of participation is in the East Side Crips. He's been doing it for 11 years. What is the defendant's knowledge of the gang activities? He told you that, too. He knew the crimes of Mr. Slaughter. He knew of other crimes that occurred in the gang. You heard that through Officer Finney when he contacted Mr. McDonald 2012, 2010, what his knowledge was of the East Side Crips. And then last you have to decide as to the enhancements, what was the defendant's intent in relation to his gang, that being the East Side Crips? [¶] [Section ]186.22[, subdivision ](b) (1), that is following first-degree murder, second-degree murder and the two robbery counts. The question before you, the defendant committed the crime, did he do it for the benefit of the East Side Crips or—it's an either/or—or in association with a criminal street gang, or in association with other members of his same gang? That would be Lawrence Slaughter—Lump; Baby Rose—Christopher Patterson. And he intended to assist, further or promote criminal conduct by gang members. Again, Baby Rose, Lump."

[46] Subdivision (a) of section 186.22 defines a separate, substantive offense, rather than an enhancement, and specifies punishment for "[a]ny person who actively participates in any criminal street gang with knowledge that its members engage in or have engaged in a pattern of criminal gang activity, and who willfully promotes, furthers, or assists *in any felonious criminal conduct by members of that gang* . . . ." (Italics added.)

requiring clarification by the court is one that has a definition that *differs* from its nonlegal meaning. [Citation.] Thus, . . . terms are held to require clarification by the trial court when their statutory definition differs from the meaning that might be ascribed to the same terms in common parlance. [Citation.]" (*People v. Estrada* (1995) 11 Cal.4th 568, 574–575 [46 Cal.Rptr.2d 586, 904 P.2d 1197], citation omitted.)

■ "Member" and "membership" have been held to be terms of ordinary meaning that require no further definition. (*People v. Green* (1991) 227 Cal.App.3d 692, 699 [278 Cal.Rptr. 140], disapproved on another ground in *People v. Castenada* (2000) 23 Cal.4th 743, 747–748, 752 [97 Cal.Rptr.2d 906, 3 P.3d 278].) Defendant says, however, that where, as here, both the gang offense and the gang enhancement are at issue, so that the jury is instructed in the language of both CALCRIM Nos. 1400 (as to the substantive offense) and 1401 (as to the enhancement), a problem arises because the term "gang members" means one thing in CALCRIM No. 1400 and something else in CALCRIM No. 1401.[47] Defendant contends: "In CALCRIM No. 1400, the term 'members' refers to the individual gang members who act in concert with the defendant in the commission of a felony. In CALCRIM No. 1401, the term 'members' refers to the gang membership as a whole—the entire gang—rather than individual gang members." This being the case, his argument runs, the trial court had a sua sponte duty to define the term as used in CALCRIM No. 1401, and its failure to perform this duty resulted in the jury being misinstructed. We disagree.

In *Albillar*, the court, in an opinion written by Justice Baxter, addressed a case in which the defendants were convicted of forcible sex offenses while acting in concert, and active participation in a criminal street gang. The jury found true the gang enhancement allegation as to the sex offenses. (*People v. Albillar* (2010) 51 Cal.4th 47, 50 [119 Cal.Rptr.3d 415, 244 P.3d 1062] (*Albillar*).) With respect to the gang offense, the high court considered—and rejected—"the argument that the phrase 'any felonious criminal conduct' in section 186.22[, subdivision ](a) refers only to gang-related felonious criminal conduct . . . ." (*Id.* at p. 59.)

With respect to the gang enhancement, one or more defendants contended (1) there was no evidence the sex offenses were committed for the benefit of,

---

[47] As given in defendant's trial, the pertinent part of CALCRIM No. 1400 told jurors: "The defendant is charged in Count 3 with participating in a criminal street gang. To prove that the defendant is guilty of this crime, the People must prove that: [¶] 1. The defendant actively participated in a criminal street gang; [¶] 2. When the defendant participated in the gang, he knew that members of the gang engage in or have engaged in a pattern of criminal gang activity; and [¶] 3. The defendant willfully assisted, furthered or promoted felonious criminal conduct by members of the gang by, A, directly and actively committing a felony offense or, B, aiding and abetting a felony offense."

at the direction of, or in association with their gang; (2) there was no evidence the sex offenses were committed with the specific intent to promote, further, or assist *other* criminal conduct by gang members; and (3) there was no evidence the sex offenses were committed with the specific intent to facilitate criminal conduct by *the gang*. The court determined none of the contentions had merit. (*Albillar, supra*, 51 Cal.4th at p. 59.) With respect to the defendants' third claim—the one that concerns us in the present case—the high court stated:

■ "[An analysis similar to that by which the court rejected the defendants' second claim] disposes of the related argument . . . , that section 186.22[, subdivision ](b)(1) requires the specific intent to promote, further, or assist a *gang-related* crime. The enhancement already requires proof that the defendant commit a gang-related crime in the first prong—i.e., that the defendant be convicted of a felony committed for the benefit of, at the direction of, or in association with a criminal street gang. [Citation.] There is no further requirement that the defendant act with the specific intent to promote, further, or assist a *gang*; the statute requires only the specific intent to promote, further, or assist criminal conduct by *gang members*. [Citations.] [¶] . . . [¶]

"We also reject the argument . . . , that the constitutional requirement of personal guilt would compel the inclusion in the enhancement of a specific intent to aid the *gang*. The claim is specious. The enhancement set forth in section 186.22[, subdivision ](b)(1) does not pose a risk of conviction for mere nominal or passive involvement with a gang. Indeed, it does not depend on membership in a gang at all. Rather, it applies when a defendant has personally committed a gang-related felony with the specific intent to aid members of that gang. Defendants cite no authority to suggest that this would run afoul of *Scales v. United States* [(1961)] 367 U.S. 203 [6 L.Ed.2d 782, 81 S.Ct. 1469], which upheld a statute criminalizing active membership in an organization that advocates the overthrow of the federal government by force or violence even in the *absence* of a specific act of criminality. [Citations.]

"In sum, *if substantial evidence establishes that the defendant intended to and did commit the charged felony with known members of a gang, the jury may fairly infer that the defendant had the specific intent to promote, further, or assist criminal conduct by those gang members.* Here, there was ample evidence that defendants intended to attack [the victim], that they assisted each other in raping her, and that they were each members of the criminal street gang. Accordingly, there was substantial evidence that defendants acted with the specific intent to promote, further, or assist gang members in that criminal conduct." (*Albillar, supra*, 51 Cal.4th at pp. 67–68, last italics added.)

The *Albillar* opinion was unanimous with respect to its discussion of section 186.22, subdivision (a) and the second prong (specific intent) of section 186.22, subdivision (b)(1).[48] We do not believe the foregoing italicized language could be clearer. Nevertheless, defendant takes the view that the California Supreme Court's plurality opinion in *People v. Rodriguez* (2012) 55 Cal.4th 1125 [150 Cal.Rptr.3d 533, 290 P.3d 1143] *(Rodriguez)* altered its pronouncement in *Albillar*. Defendant reads too much into *Rodriguez*.

In *Rodriguez, supra,* 55 Cal.4th 1125, the issue was whether *the substantive gang offense* could be violated by a gang member acting alone to commit a felony. A majority of the court held it could not. *(Id.* at p. 1128 (lead opn. of Corrigan, J.); see *id.* at p. 1139 (conc. opn. of Baxter, J.).) In so ruling, the lead opinion found it "significant that the offense requires a defendant to promote, further, or assist *members* of the gang." *(Rodriguez, supra,* at p. 1131 (lead opn. of Corrigan, J.).) Justice Corrigan explained: "Section 186.22[, subdivision ](a) speaks of 'criminal conduct by *members* of that gang.' (Italics added.) '[M]embers' is a plural noun. The words 'promotes, furthers, or assists' are the verbs describing the defendant's acts, which must be performed willfully. The phrase 'any felonious criminal conduct' is the direct object of these verbs. The prepositional phrase 'by members of that gang' indicates who performs the felonious criminal conduct. Therefore, to satisfy the third element, a defendant must willfully advance, encourage, contribute to, or help *members* of his gang commit felonious criminal conduct. The plain meaning of section 186.22[, subdivision ](a) requires that felonious criminal conduct be committed by at least two gang members, one of whom can include the defendant if he is a gang member. [Citation.]" *(Id.* at p. 1132 (lead opn. of Corrigan, J.).)

Defendant points to the fact that at times, the lead opinion in *Rodriguez* speaks, with reference to the gang enhancement, in terms of specific intent to promote, etc., *the gang*. For instance, during a discussion of the constitutional concerns raised by *Scales v. United States, supra,* 367 U.S. 203, *Rodriguez* states: "It is established, then, that one need not have the specific intent to promote, further, or benefit *the gang* to violate section 186.22[, subdivision ](a), nor must one commit a gang-related felony." *(Rodriguez, supra,* 55 Cal.4th at p. 1135 (lead opn. of Corrigan, J.), italics added.) The opinion also states: "Section 186.22[, subdivision ](a) and section 186.22[, subdivision ](b)(1) strike at different things. The enhancement under section 186.22[, subdivision ](b)(1) punishes gang-related conduct, i.e., felonies committed with the specific intent to benefit, further, or promote *the gang*. [Citation.]" *(Id.* at p. 1138 (lead opn. of Corrigan, J.), italics added.) And: "[O]ur

---

[48] Two justices disagreed with the majority's conclusion the evidence supported a true finding on the first prong of the enhancement. (See *Albillar, supra,* 51 Cal.4th at p. 68 (conc. & dis. opn. of Werdegar, J.).)

conclusion does not lead to absurd results. A lone gang member who commits a felony will not go unpunished; he or she will be convicted of the underlying felony. Further, such a gang member would not be protected from having that felony enhanced by section 186.22[, subdivision ](b)(1) . . . . Because the gang enhancement under section 186.22[, subdivision ](b)(1) requires both that the felony be gang related and that the defendant act with a specific intent to promote, further, or assist *the gang*, these requirements provide a nexus to gang activity sufficient to alleviate due process concerns. [Citation.]" (*Id.* at pp. 1138–1139 (lead opn. of Corrigan, J.), italics added.)

Defendant also points to Justice Baxter's concurring opinion in *Rodriguez*. Basing his conclusion "solely on the plain meaning of the express statutory language" and finding "no need to consider the constitutional implications of a contrary construction," Justice Baxter determined that "the gang offense requires felonious criminal conduct committed by at least two '[gang] members,' including any defendant who is a member of 'that gang.' [Citation.]" (*Rodriguez, supra*, 55 Cal.4th at p. 1140 (conc. opn. of Baxter, J.).) Justice Baxter further wrote:

"I recognize, of course, that a seemingly similar reference to gang 'members' appears in both section 186.22[, subdivision ](a) and section 186.22[, subdivision ](b)(1). However, small but significant differences in grammar and context make clear that the enhancement provision lacks the same multiple-actor condition as the gang offense.

"First, section 186.22[, subdivision ](b)(1), unlike section 186.22[, subdivision ](a), applies where the defendant, even if acting alone, 'specific[ally] inten[ds]' by his felonious action to promote, further, or assist in any criminal conduct by gang members. Section 186.22[, subdivision ](b)(1)'s reference to promoting, furthering, or assisting gang members thus merely describes a culpable mental state. By contrast, the gravamen of section 186.22[, subdivision ](a) is that the defendant's own criminal conduct must itself directly promote, further, or assist felonious criminal conduct by members of the gang. Thus, section 186.22[, subdivision ](a) implies joint criminal action with other gang members—an implication that does not necessarily arise in section 186.22[, subdivision ](b)(1). *This difference suggests we need not construe gang 'members' in each provision the same way.*

"The relevant two subdivisions also treat criminal conduct by gang 'members' differently. As noted, section 186.22[, subdivision ](a) plainly requires felonious criminal conduct committed in tandem by at least two gang members, one of whom may be the defendant. In contrast, nothing in section 186.22[, subdivision ](b)(1) states or implies that the criminal conduct by

gang members which the defendant intends to promote, further, or assist is the same criminal conduct underlying the felony conviction subject to enhancement. For this reason too, the direct and specific link between criminal conduct committed by the defendant and that committed by other gang members set forth in the gang offense [citation] is not present in the gang enhancement [citation].

"Accordingly, I agree with Justice Corrigan that the gang offense . . . , unlike the gang enhancement . . . , does not extend to defendants who commit the requisite criminal conduct on their own." (*Rodriguez, supra,* 55 Cal.4th at pp. 1140–1141 (conc. opn. of Baxter, J.), italics added & omitted.)

■ "The discussion in an appellate decision is directed to the issue presented." (*People v. Colantuono* (1994) 7 Cal.4th 206, 221, fn. 13 [26 Cal.Rptr.2d 908, 865 P.2d 704].) The issue presented in *Rodriguez* was whether a gang member acting alone could violate subdivision (a) of section 186.22. The italicized portions of the lead and concurring opinions must be read in light of that issue. We will not conclude an opinion addressing an issue specifically and solely related to section 186.22, subdivision (a) sub silentio overruled or significantly altered by an opinion directly addressing and explaining different language contained solely in section 186.22, subdivision (b)(1), particularly when, as in *Rodriguez,* the opinion mentions the language of section 186.22, subdivision (b)(1) only in context of its discussion of section 186.22, subdivision (a).

Defendant points to *People v. Rios* (2013) 222 Cal.App.4th 542 [165 Cal.Rptr.3d 687] (*Rios*), in which the Court of Appeal concluded "that the holding in *Rodriguez*—that a lone actor cannot violate section 186.22, subdivision (a)—does not apply to the separate enhancement set forth in section 186.22, subdivision (b), which enhances punishment when a defendant is found, among other things, to have acted with the specific intent to further, promote or assist in criminal conduct by gang members." (*Id.* at p. 546.) Defendant says a holding under subdivision (b) of section 186.22 "[can] apply to a lone actor . . . means that the specific intent element cannot refer to the intent to assist a gang-member accomplice (because a lone actor has no accomplice). Instead, the defendant must have the specific intent to promote, further, or assist criminal conduct by 'gang members' [as] a whole, or in other words, must have the specific intent to promote, further, or assist 'the gang.' "

We do not believe *Rios* assists defendant. Subdivision (b)(1) of section 186.22 requires a specific intent "to promote, further, or assist *in any criminal conduct by gang members.*" (Italics added.) As Justice Baxter noted in his concurring opinion in *Rodriguez,* "nothing in [that subdivision] states or

implies that the criminal conduct by gang members which the defendant intends to promote, further, or assist *is the same criminal conduct* underlying the felony conviction subject to enhancement." (*Rodriguez, supra,* 55 Cal.4th at p. 1141 (conc. opn. of Baxter, J.).) But as Justice Baxter observed in his majority opinion in *Albillar,* "section 186.22[, subdivision ](b)(1) encompasses the specific intent to promote, further, or assist in *any* criminal conduct by gang members—including the current offenses . . . ." (*Albillar, supra,* 51 Cal.4th at p. 65.) He also wrote about the gang enhancement: "There is no further requirement that the defendant act with the specific intent to promote, further, or assist a *gang*; the statute requires only the specific intent to promote, further, or assist criminal conduct by *gang members.* [Citations.]" (*Id.* at p. 67.) As we previously pointed out, under *Albillar,* "if substantial evidence establishes that the defendant intended to and did commit the charged felony *with known members of a gang,* the jury may fairly infer that the defendant had the specific intent to promote, further, or assist criminal conduct *by those gang members,*" as required for the gang enhancement. (*Id.* at p. 68, italics added.)

Although *Albillar* concerned the sufficiency of evidence to uphold a gang enhancement finding, CALCRIM No. 1401, as given in the present case, correctly stated the applicable law set out in that case, as did the prosecutor's related argument to the jury. Nothing in *Rodriguez* suggests any change in *Albillar*'s interpretation of section 186.22, subdivision (b)(1).[49] Accordingly, defendant's jury was not misinstructed on the gang enhancement.

D.   *CALCRIM No. 1400**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The convictions on counts 2, 3, and 4; the Penal Code section 186.22, subdivision (b) enhancement on count 2; and the prior strike and prison term

---

[49] Before *Albillar,* at least two appellate opinions found the specific intent required by section 186.22, subdivision (b) was established where the defendant committed the charged crime(s) with an accomplice he or she knew to be a fellow gang member. (*People v. Leon* (2008) 161 Cal.App.4th 149, 163 [73 Cal.Rptr.3d 786]; *People v. Morales* (2003) 112 Cal.App.4th 1176, 1198 [5 Cal.Rptr.3d 615].) Neither of these cases is even mentioned in *Rodriguez,* strengthening our conclusion the state high court had no intent to alter, and did not perceive itself as altering, the plain language of *Albillar* concerning the gang enhancement. Since *Rodriguez* was decided, at least one appellate court has relied on *Albillar* to reach the conclusion the specific intent requirement was sufficiently shown by evidence the defendant intended to assist his fellow gang member in criminal conduct. (*People v. Gonzales* (2015) 232 Cal.App.4th 1449, 1464–1465 [182 Cal.Rptr.3d 294].)

*See footnote, *ante,* page 16.

enhancements are affirmed. The special circumstance finding as to count 1 is vacated and retrial is barred. The conviction on count 1 and related Penal Code section 186.22, subdivision (b) enhancement is reversed and the matter is remanded for further proceedings. Should the district attorney fail to give notice of intent to retry count 1 and the related gang enhancement within 30 days of the issuance of remittitur in this case, the trial court shall proceed to resentence defendant on the remaining counts and enhancements.

Franson, J., and Peña, J., concurred.

Appellant's petition for review by the Supreme Court was denied September 30, 2015, S227829.